IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

WILLIAM EAGLE,

    Plaintiff,

v.                                        No. 15-cv-0577 MV/SMV

FREEPORT-MCMORAN, INC.,

    Defendant.

**ORDER DENYING PLAINTIFF'S REQUESTS TO FURTHER
RESTRICT DEFENDANT'S COMMUNICATIONS WITH ITS EMPLOYEES**

THIS MATTER is before the Court on Plaintiff's several pending requests and the briefing and supplemental briefing on those requests. [Docs. 40, 43, 47, 50, 53, 62, 65]. The Court heard oral argument on March 10, 2016. [Doc. 66]. Having considered the relevant documents, argument, and law, and being otherwise fully advised in the premises, the Court finds that Plaintiff's requests for an evidentiary hearing should be **GRANTED**. However, the requests that Defendant's communications with its employees be restricted [Docs. 40, 47, 50, 62] are not well-taken and will be **DENIED.**

### Background

Plaintiff filed his Second Amended Complaint on September 16, 2015, asserting claims for unpaid wages, as a collective action under the Fair Labor Standards Act ("FLSA"), or as a class action under Fed. R. Civ. P. 23, or both. [Doc. 12].

Under the FLSA, persons wishing to join a collective action must affirmatively join the lawsuit, or "opt in." 29 U.S.C. § 216 ("No employee shall be a party plaintiff to any such action

unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.). "In contrast, potential members of a Rule 23(b)(3) class must be given only the opportunity to *opt out* of the class action; they will automatically be included in the class if they do not speak up." *Ervin v. OS Rest. Servs., Inc.*, 632 F.3d 971, 976 (7th Cir. 2011) (emphasis added). Plaintiff's lawsuit has not yet been certified as an FLSA collective action or a Rule 23 class action. *See* [Doc. 27] (Plaintiff's pending Motion for Conditional Class Certification).

On November 13, 2015, Plaintiff filed an emergency motion that laid out his concerns about severance packages that Defendant was offering to some of its employees, at least one of whom had already agreed to join this lawsuit. *See* [Doc. 30]. After an expedited hearing on November 16, 2015, the Court ordered that:

> [A]ny and all communication [by Defendant] with the named Plaintiff [William Eagle] or opt-in Plaintiffs regarding severance packages, releases of claims, or other matters directly related to the claims raised in this lawsuit must be communicated through Plaintiff's counsel. Upon receipt of any such communications, Plaintiff's counsel must provide timely, written confirmation that he has presented the communications to the intended person(s).

[Doc. 34]. The Court explained that the "opt-in Plaintiffs" were those individuals listed on the "Agreement to Join Class Action" forms. *Id.* (citing [Doc. 4-1] at 1–3 and [Doc. 25-1] at 1–5).

That is precisely what Defendant did. In compliance with the Court's order, it began to provide Plaintiff's counsel with forms to disseminate to some of the opt-in Plaintiffs. Defendant had generated these forms after it discovered "discrepancies" in some of the amounts it had paid to its employees for end-of-shift work. A form, entitled "Acknowledgement of Receipt of Paycheck and Understanding" (hereinafter "the Acknowledgement Form"), accompanied a check

compensating certain employees for the additional wages that may have been owed.[1] The Acknowledgement Forms contained the following or a similar statement:

> Based on the Company's current knowledge and information, there is no additional money owed to you by the Company at the present time. Please be aware that your acceptance and cashing of the paycheck does not release any legal claims that you may have against the Company for alleged failure to pay wages, but this payment could be deducted from any damages that you could obtain as a result of pursuing any such legal claim.

[Doc. 40-1] at 5; *see also* Defendant's Exh. A, B, C, D (additional examples of forms, which are attached hereto).

Plaintiff's counsel's complaints about these Acknowledgement Forms have morphed and mutated with each filing. At first, he objected to delivery of the Acknowledgement Forms to opt-in Plaintiffs. Counsel asserted that the above statement (or some version of it) constituted legal advice by Defendant, which he argued should not be allowed. Plaintiff's counsel also wanted discovery into how Defendant had calculated the amounts of the checks before he would present them to his clients. *See* [Doc. 40] at 2–3. Plaintiff's objections grew to take issue with similar forms and checks sent to employees who were *not* opt-in Plaintiffs, but who Plaintiff apparently believes could conceivably become parties in the future. [Doc. 50] at 2 (referring to "the Defendant's unilateral decision to contact and settle claims regarding unpaid hours" with employees who are potential class or collective members).

---

[1] Defendant's Human Resources Manager, Robert Hawkins, testified that an employee, Sikey Benavidez, had complained that he did not believe he was being fully compensated for his end-of-shift work. On Mr. Benavidez's complaint, Mr. Hawkins ordered audits of certain employees' payroll records. Mr. Hawkins testified that the audits showed that Mr. Benavidez and others may have not been paid all that they were owed. Apparently, the audit results were not clear one way or the other. Because Mr. Hawkins could not be certain that the employees were *not* entitled to the discrepant amounts, he ordered that they be paid.

3

At the hearing on March 10, 2016, Plaintiff William Eagle testified that he had heard from a third party that, contrary to the assertions in the form to the effect that acceptance of the back pay would not release any legal claims the employee may have against Defendant, some employees were told that if they accepted the paycheck, "that would be it," suggesting that such acceptance would preclude them from receiving any compensation for unpaid work via this FLSA action.  It is not clear whether these statements were alleged to have been made to opt-in Plaintiffs or to persons who are not parties to this lawsuit.[2]

Plaintiff requests that the Court "enjoin Defendant from submitting any communications regarding settlement of putative claims for opt[-]out or opt[-]in[3] members until the classes have been defined and dealt with."  [Doc. 62] at 2.  In essence, Plaintiff wants the Court to order Defendant to cease all communications regarding unpaid wages with any employee or former employee regardless of whether he is an opt-in Plaintiffs  or not.

**Analysis**

"[A] district court has both the duty and the broad authority to exercise control over a class action and to enter appropriate orders governing the conduct of counsel and parties." *Gulf*

---

[2] Mr. Eagle further testified that his son (who also works for Defendant) had received a written warning for alleged actions that triggered only a verbal warning for others.  He testified that his wife (who also works for Defendant) had been directed by her supervisor to continue working even though she was taking codeine as ordered by her doctor.  Finally, he testified that another employee, who had been gathering signatures of people who wanted to join the lawsuit, had been escorted to the parking lot by a supervisor who had then confiscated and tore up the sign-in sheet.  Mr. Eagle said that after that incident, the employee would no longer speak to him.  The Court denied Plaintiff's request to call another witness, Keith Anderson, by telephone.  Plaintiff's counsel represented that Mr. Anderson would testify about further alleged retaliation including against Mr. Eagle's wife.  Counsel represented that Mr. Anderson would not testify about any allegedly misleading communications.  At the hearing, Plaintiff urged that the alleged retaliation should be considered evidence of Defendant's improper communications.  However, the Court is not persuaded.  If Defendant's employees are retaliated against, there may be some method for them to seek relief.  The instant motions are not it.  Plaintiff fails to cite any authority whatsoever connecting retaliation—even if it is true—to an order restricting Defendant's communications with its employees.

[3] The Court takes Plaintiff's reference to "opt out" members to mean employees of Defendant would could conceivably become part of the Rule 23 class action if his Motion for Conditional Class Certification is granted.

*Oil Co. v. Bernard*, 452 U.S. 89, 100–01 (1981).  In *Gulf Oil*, a case dealing with a Rule 23 class action, the Supreme Court recognized that although "[c]lass actions serve an important function in our system of civil justice," they also present "opportunities for abuse."  *Id*. at 99–100 n.10; *see also Hoffmann-La Roche, Inc. v. Sperling*, 493 U.S. 165, 170–72 (1989) (applying *Gulf Oil* to collective actions under Section 216 of the FLSA).  The potential abuses noted by the *Gulf Oil* Court include "[u]napproved communications to class members that misrepresent the status or effect of the pending action." *Gulf Oil*, 452 U.S. at 101.  Unlike class actions governed by Rule 23, in which potential class members may choose to opt out of the action, FLSA collective actions require potential collective members to opt in to the action in writing in order to become members of the class.  *See* 29 U.S.C. § 216(b).  As in a Rule 23 class action, a court retains authority in a Section 216 collective action to govern the conduct of counsel and parties. *Sperling*, 493 U.S. at 171.

    While a court may exercise discretionary control over a class action, "this discretion is not unlimited."  *Gulf Oil*, 452 U.S. at 101.  If a court issues "an order limiting communications between parties and potential class members[, it] should be based on a clear record and specific findings that reflect a weighing of the need for a limitation and the potential interference with the rights of the parties."  *Id*. at 101–02.  Any such restrictive order must be narrowly tailored to avoid impinging upon the parties' constitutional rights of free speech and association.  *Id*. at 102.

    In a Section 216 action, "in many cases there will be no problem [with communications to putative class members] requiring remedies at all."  *Gulf Oil*, 452 U.S. at 104.  Once conditional certification is granted, communications with the putative class are not prohibited "where a party has not engaged in misleading, coercive, or otherwise abusive communications."

5

*Longcrier v. HL–A Co., Inc.*, 595 F. Supp. 2d 1218, 1227 (S.D. Ala. 2008); *see, e.g., Parks v. Eastwood Ins. Servs., Inc.*, 235 F. Supp. 2d 1082, 1085 (C.D. Cal. 2002) (permitting communications by defendant that described the case in general terms and stated that employees could contact defendant's counsel with questions).

To determine when to restrict communication with putative class members, courts evaluate the evidence of actual or threatened abuse by the party sought to be restrained. *See Kleiner v. First Nat'l Bank of Atlanta*, 751 F.2d 1193, 1205 (11th Cir. 1985). Courts have issued restrictive orders where it is found that the ex parte communications "mislead[ ] class members," "misrepresent[ ] the status or effect of the pending action," "coerce prospective class members into excluding themselves from the litigation," or "undermine cooperation with or confidence in class counsel." *Bass v. PJCOMN Acquisition Corp.*, 2011 WL 902022 (D. Colo. Mar. 14, 2011) (citing *Hampton Hardware, Inc. v. Cotter & Co., Inc.*, 156 F.R.D. 630, 632 (N.D. Tex. 1994); *Cox Nuclear Med. v. Gold Cup Coffee Servs.*, 214 F.R.D. 696, 698 (S.D. Ala. 2003)); *Kleiner*, 751 F.2d at 1206.

In addition to restricting potentially misleading, confusing, and coercive communication, courts may find a further reason to restrict communications in a Section 216 post-conditional certification case where a court has already approved a class notice. *Parks*, 235 F. Supp. 2d at 1083. This is so because "after the Court authorizes a notice in a [Section] 216(b) case, the Court has an interest that no defense communication undermine or contradict the Court's own notice." *Id*. Thus, in Section 216 cases, "there is no prohibition against pre-'opt-in' communication with a [Section] 216(b) potential plaintiff, unless the communication undermines or contradicts the Court's notice," or is misleading, coercive, or otherwise improper. *Id*. at 1085;

*Goody v. Jefferson Cty.*, 2010 WL 3834025 at *2 (D. Idaho Sept. 23, 2010) (unpublished) (no prohibition "unless the communication contradicts a court notice, is misleading, or improper").

## Conclusion

**THE COURT FINDS THAT:**

1. Plaintiff has failed to show that Defendant's communications with its employees were misleading, coercive, abusive, or otherwise improper;

2. Plaintiff has failed to establish that he is entitled to any relief at this time;

**IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED** that Plaintiff's pending motions [Docs. 40, 47, 50, 62] are **GRANTED** to the extent that they request an evidentiary hearing. Otherwise, however, they are **DENIED.**

**IT IS SO ORDERED.**

_____
**STEPHAN M. VIDMAR**
**United States Magistrate Judge**