## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

WILLIAM EAGLE, individually and
on behalf of all similarly situated
persons,

               Plaintiff,

v.                                   Cause No. 2:15-CV-00577-MV-GJF

FREEPORT-McMORAN, INC., f/k/a
FREEPORT-McMORAN COPPER &
GOLD, INC., a Delaware Corporation,

               Defendant.

## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
## ON UNPAID OVERTIME WAGES UNDER THE FAIR LABOR STANDARDS ACT

      Defendant Freeport-McMoRan Inc. ("Defendant") by and through its counsel, Modrall,

Sperling, Roehl, Harris & Sisk, P.A. (George R. McFall and Jennifer L. Bradfute), respectfully

submits Defendant's Motion for Summary Judgment on Unpaid Overtime Wages Under the Fair

Labor Standards Act ("FLSA"), and in support of this motion states the following.  Plaintiff's

counsel was contacted and opposes this motion.

## INTRODUCTION

      Defendant, a Delaware corporation, is a holding company and the parent corporation of

other entities which own interests in Freeport-McMoRan Chino Mining Company (the "Chino

Mine").  On July 7, 2015, Plaintiff filed suit against Defendant claiming that he was not properly

paid overtime wages for the time he spent working at the Chino Mine.[1]  Defendant is not the

proper defendant in this case because it did not employ Plaintiff or any of the workers at the

---

[1] Plaintiff also asserted claims related to the failure to pay straight time, breach of the implied covenant of good faith
and fair deal and punitive damages.  The Court dismissed those claims on May 26, 2016.  *See* Doc. 77.  The Court
has also denied Plaintiff's motion for conditional class certification under the FLSA.  *See* Doc. 81.

Chino Mine.  Defendant was not Plaintiff's employer, and Defendant does not hire, fire, supervise employees, process payroll, maintain employment records, establish work schedules, or manage day-to-day operations at the Chino Mine.  Defendant is filing a separate motion for summary judgment on the basis that it is not Plaintiff's employer, and therefore not a proper party.  However, regardless of the merits of that motion, Plaintiff's claims for unpaid overtime fail as a matter of law.

To support a claim for unpaid overtime under the FLSA, the plaintiff bears the burden of establishing the number of hours of worked each week and the amount of wages due per pay period.  Plaintiff cannot, as a matter of law, make this showing.  Plaintiff testified at his deposition taken on October 17, 2016, that he does not have any estimates of the alleged unpaid overtime for which he is seeking payment.  Likewise, Plaintiff does not have any records which support his claim. Plaintiff, therefore, is unable to prove his alleged unpaid overtime wages.

Additionally, Plaintiff seeks overtime wages for non-compensable travel time under the Portal-to-Portal Act, 29 U.S.C. § 254.  This end-of-shift travel time is not compensable under the Portal-to-Portal Act.  In addition, this end-of-shift travel time was expressly listed as time which is not compensable under a binding collective bargaining agreement ("CBA"), which was in effect during most of Plaintiff's employment.  The CBA contained a mandatory grievance procedure, which Plaintiff was required to exhaust before filing a lawsuit.  Plaintiff failed to follow this grievance procedure.  As a result, Plaintiff's claims for the payment of end-of-shift travel time fail as a matter of law under the Portal-to-Portal Act, the CBA, and well-established case law.

## I.   SUMMARY JUDGMENT STANDARD

"Summary judgment is appropriate when the record shows 'that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Bacchus Industries, Inc. v. Arvin Industries. Inc.,* 939 F.2d 887, 891 (10th Cir. 1991) (quoting Fed. R. Civ. P. 56(c)). Once the party moving for summary judgment properly supports its motion, the non-moving party must show that there is a genuine issue of material fact. *Allen v. Denver Pub. Sch. Bd.*, 928 F.2d 978, 983 (10th Cir. 1991), *overruled on other grounds by Kendrick v. Penske Transp. Svcs.*, 220 F.3d 1220, 1228 (10th Cir. 2000). "A fact is 'material' if, under the governing law, it could have an effect on the outcome of the lawsuit.  A dispute over a material fact is 'genuine' if a rational jury could find in favor of the nonmoving party on the evidence presented." *Sports Unlimited, Inc. v. Lankford Enterprises, Inc.,* 275 F.3d 996, 999 (10th Cir. 2002) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986)). "'The party opposing the motion must present sufficient evidence in specific, factual form for a jury to return a verdict in that party's favor.'" *Wilkinson v. Ruidoso*, 2004 U.S. Dist. LEXIS 28290, *11 (D.N.M. Aug. 23, 2004) (citing *Bacchus Industries. Inc. v. Arvin Industries, Inc.,* 939 F.2d at 891).

## II.   STATEMENT OF UNDISPUTED MATERIAL FACTS  ("UMF")

1.      Plaintiff was employed at the Chino Mine from August 1, 2011 until March 20, 2014 in the position of Production Truck Driver.  *See* Second Amended Complaint [Doc. 12], ¶ 6; Deposition of William Eagle, at 21:19-22:3.  Excerpts from Plaintiff's deposition are attached hereto as **Exhibit A**.  The time period between August 1, 2011 and March 20, 2014, is referred to herein as Plaintiff's First Period of Employment.

2.      Plaintiff subsequently worked at the Chino Mine as a Production Truck Driver between February 16, 2015, and June 17, 2015.  Exh. A, 22:4-8.  This time period will be referred to herein as Plaintiff's Second Period of Employment.

3.      During both periods of Plaintiff's employment, the workweek at the Chino Mine consisted of a 168-hour period, beginning at the start of the day shift on Sunday and ending at the start of the day shift on the following Sunday.  *See* Declaration of Robert Hawkins, attached as **Exhibit B**, at ¶ 2.

4.      During both periods of employment at the Chino Mine, Plaintiff was a member of Crew 2.  Exh. A, 8:18-22; Exh. B, ¶ 18.

5.      Plaintiff's crew followed a schedule known as a "Super Seven" schedule.  The schedule consisted of four days of 12-hour shifts, followed by seven days off.  Then employees were required to work four days of 12-hour shifts followed by three days off.  Employees then worked three days of 12-hour shifts followed by three days off.  The cycle then repeated itself.  Exh. B, Hawkins Declaration, ¶ 18, and Exhibits 3, 4, and 5 attached thereto; s*ee also*, Second Amended Class Action Complaint [Doc. 12], ¶ 7.

6.      As a part of Crew 2, Plaintiff typically worked two weeks per month which consisted of 36 hours each, and two weeks per month which consisted of 48 hours each.  This generally required members of Crew 2 to work approximately 16 hours of overtime each month.  Exh. B, ¶ 19.  However, employees could be asked to work additional hours, or they could switch shifts with other workers, resulting in either more or less overtime hours.  *Id*.

A.      <u>Plaintiff's Allegation of Unpaid End-of-Shift Travel Time.</u>

7.      At an evidentiary hearing held on March 10, 2016, Plaintiff testified that he is seeking payment for unpaid overtime during both his First and Second Periods of Employment,

which consists of time spent traveling from his equipment back to the portal of the Chino Mine at the end of each work shift.  He explained this time as follows:

> A.  After we queue up the trucks, we get into a company vehicle, a company van, one of the operators drives the van, whether it's equipment or a truck driver, and they go around and pick up drivers at the different queue points and take them back to operations for end-of-shift.
>
> Q.  And in terms of the actual hours that were paid versus the actual hours that were worked, what was the – generally the difference?
>
> A.  15 a day for every day worked.

Excerpts from the March 10, 2016 Hearing, 8:23-9:6, attached as **Exhibit C**.

8.      In his deposition Plaintiff testified to the following:

> Q.  Okay.  Did you understand that 15 minutes of the travel time from your equipment back to the operation was not compensable; that you were not being paid for that?
>
> Mr. Lyle:  Object to the form of the question.
>
> A.  That's my complaint.

Exh. A, 52:17-24.

### B.      Plaintiff's Other Allegations for Unpaid Overtime.

9.      Plaintiff also alleges that his paystubs indicate that he worked 170.63 hours from December 8, 2013 (Sunday) through December 21, 2013 (Saturday), and that he should have been paid overtime for 90.63 hours, equaling $1,837.01 in unpaid overtime wages.  Exh. A, 73:1-6.

10.      Plaintiff testified at his deposition that he cannot recall what hours he worked during this time period.  Exh A, 73:10-74:18.

11.     Plaintiff further testified that he does not know whether he is claiming similar wages based on his other pay stubs.  Exh. A, 76:25-77:24.

12.     Plaintiff has no records which show when he worked overtime at the Chino Mine that supports his allegations of unpaid wages.  Exh. A. 45:24-46:24.  Plaintiff testified to the following:

> Q. . . . . What I am interested in is whether you have an idea or estimate of how much you are owed for unpaid straight time.
>
> A.  No.
>
> Q.  Okay.  How about unpaid overtime?  Do you have an estimate of how much you are owed for unpaid overtime?
>
> A.  No.
>
> Q.  Okay.  Did you keep any independent records that you created of how much time you worked when you were at Chino?
>
> A.  No.
>
> Q.  Did you keep any independent records of how much time you believe that you were not paid for while working at Chino?
>
> A.  No.
>
> Q.   And that would -- and I'm asking that question as it applies to both straight time and overtime.  So you have no independently-created records that would show how much straight time you are owed, correct?
>
> A.  Correct.
>
> Q.  And you have no independent records created by you that would show how much unpaid overtime you incurred, correct?
>
> A.  Correct.

*Id*.

13.     Freeport-McMoRan Chino Mines Company maintains time clock records to track the time employees spend working at the Chino Mine, which shows when employees swiped a time card to clock in and clock out.  *See* Declaration of Scott Kiel, attached as **Exhibit D**, at ¶ 4.

14.     The time clock records for Plaintiff show that he worked 100.1 hours during the December 8 – December 21, 2013 pay period.  *Id*.  Out of those 100.1 hours, 20.1 hours were overtime hours.  *Id.*, ¶ 3.

15.     Plaintiff's pay stub for the December 8 – December 21, 2013, pay period shows that he was paid one and one-half times his regular rate of pay for 20.1 hours of overtime.  Exh. D, ¶ 6.

**C.     The Collective Bargaining Agreement.**

16.     Between August 11, 2011, and November 14, 2014, a Collective Bargaining Agreement between the Chino Mine and the United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union (the "CBA") was in effect.  Exh. B, ¶ 3, and Exhibit 1 attached thereto, at ¶ 1.1.

17.     The CBA states that the employees covered by the agreement are those employed in the job classifications contained in Exhibit A to the CBA.  Exh. B, ¶ 4. Exhibit A to the CBA lists Production Truck Drivers among the covered employees.  *See* Exh. B, ¶ 5.

18.     Paragraph 14.4 of the CBA specifically governs how to measure work time for positions covered by the CBA.  *See* Exhibit 1 to Exh. B. at ¶ 14.4.  It states:

> All employees will be at their work station and ready for work at the start of their scheduled shift.  All employees will remain at their designated work station until the end of the shift or, in designated jobs, until properly relieved.  Time used in personal preparation for work, *travel to and from the work station*, wash-up and clothes changing will not be considered as time worked and will not be compensated by the Company.

*Id.* (emphasis added).

19. The CBA further provides that:

> Employees transported back to the starting point will receive pay for all time spent traveling in excess of 15 minutes after shift ending time at their applicable rate.  Such time will be paid in six minute increments.

*Id.*, ¶ 14.4 (b).

20.    The CBA provides that any disputes "involving an alleged violation of a specific provision of [the] Agreement in connection with a specific act, or an alleged violation of an employment related statue, regulation or other law," must be addressed exclusively through the CBA Grievance and Arbitration Procedure.  *See* Exhibit 1 to Exh. B, ¶¶ 6.2, 6.14.

21.    The CBA Grievance and Arbitration Procedure required Plaintiff to submit any grievances related to the provisions governed by the CBA to his immediate supervisor "no later than 10 days after the event giving rise to the grievance."  *Id.*, ¶ 6.6.  If Plaintiff was not satisfied with his supervisor's response, he was required to proceed to step 2 of the grievance procedure and appeal the supervisor's decision within 10 days to his department manager.  *Id.*  If the matter was not resolved by Plaintiff's department manager, he was then required to exhaust the remainder of the grievance procedure requirements, which included appealing to a human resources manager and going to arbitration.  *Id.*, ¶¶ 6.6 – 6.14.

22.    Plaintiff testified at his deposition that he had never talked to anyone in the Human Resources Department concerning his claims for unpaid time.  Exh. A, 58:10-59:9.

23.    Beyond notifying his immediate supervisors verbally of his claims that he was not being paid properly, Plaintiff did not pursue the grievance procedure contained in the CBA.  Exh. B, ¶ 13.

## ARGUMENT

I. **PLAINTIFF'S UNSUPPORTED ALLEGATIONS FOR UNPAID OVERTIME ARE INSUFFICIENT TO SURVIVE SUMMARY JUDGMENT.**

In a claim for unpaid overtime arising under the FLSA, the plaintiff "bears the burden of proof to establish, by a preponderance of the evidence, the number of hours of overtime worked each week and the wages due per pay period." *Bustillos v. Bd. of Cnty. Comm'rs*, 2015 U.S. Dist. LEXIS 162697, *39 (D.N.M. Oct. 20, 2015); *Bustillos v. Bd. of County Comm'rs*, 2015 U.S. Dist. LEXIS 162698, *45 (D.N.M. Oct. 20, 2015); *see also Courtright v. Board of County Commissioners of Payne County*, Oklahoma, 2011 U.S. Dist. LEXIS 60017, *28 (W.D. Okla. June 3, 2011); *Anderson v. Mt. Clemens Pottery Co.,* 328 U.S. 680, 687, 66 S. Ct. 1187, 90 L. Ed. 1515 (1946); *Donovan v. Simmons Petrol. Corp.,* 725 F.2d 83, 85 (10th Cir. 1983).  At a minimum, Plaintiff must articulate the approximate number of unpaid overtime hours allegedly worked. *See Dejesus v. HF Mgmt. Servs., LLC*, 726 F.3d 85, 89 (2d Cir. 2013). The failure to satisfy this showing entitles Defendant to summary judgment.  *See Garcia v. U Pull It Auto & Truck Salvage, Inc*., 2016 U.S. App. LEXIS 16925 (5th Cir. Tex. Sept. 15, 2016); *Holaway v. Stratasys, Inc*., 771 F.3d 1057, 1059-60 (8th Cir. 2014); *Melton v. Tippecanoe Cnty*., 2016 U.S. App. LEXIS 17352 (7th Cir. Sept. 22, 2016).

For example, in two different decisions issued in the *Bustillos* case, the United States District Court for the District of New Mexico granted summary judgment in favor of the employer after the plaintiffs failed to present sufficient evidence (other than their own unsupported testimony) which showed the amount of uncompensated overtime hours allegedly worked.  2015 U.S. Dist. LEXIS 162697, *43; 2015 U.S. Dist. LEXIS 162698, *48. The court explained in those decisions that a claimant's vague recollection concerning the amount of unpaid overtime hours worked is insufficient as a matter of law to establish liability under the

FLSA.   2015 U.S. Dist. LEXIS 162698, **50-52.   This same reasoning applies here. At his

deposition, Plaintiff failed to identify any specific amount of hours for which he seeks to recover

wages.   Plaintiff testified to the following:

> Q.   . . . . What I am interested in is whether you have an idea or estimate of how much you are owed for unpaid straight time.
>
> A.   No.
>
> Q.   Okay.  How about unpaid overtime?  Do you have an estimate of how much you are owed for unpaid overtime?
>
> A.   No.
>
> Q.   Okay.  Did you keep any independent records that you created of how much time you worked when you were at Chino?
>
> A.   No.
>
> Q.   Did you keep any independent records of how much time you believe that you were not paid for while working at Chino?
>
> A.   No.

UMF 13.

Plaintiff nonetheless claims that he is owed overtime wages for approximately 90 hours

of alleged overtime during the December 8 – December 21, 2013 pay period and 15 minutes a

day (or less) of end-of-shift travel time. UMF ¶¶ 8-11.   This is the only pay period which

Plaintiff specifically identifies the number of overtime hours he was allegedly underpaid.

Plaintiff, however, lacks any documentation which shows: (1) that he actually worked these

hours, and (2) whether these hours qualify as overtime under the FLSA.   For example, in his

answers to Defendant's interrogatories, Plaintiff claimed that he worked a total of 170.63 hours

in the December 8 – December 21 pay period.   However, Plaintiff testified to the following at his

deposition:

Q.  Now, did you work 170.63 hours in that two-week time period?

A.  I don't recall.

*** 

Q.    (BY MR. McFALL) Okay.  This answer to interrogatory indicates that you worked 90.63 hours of overtime.  Did I read that correctly?

A.  Yes.

Q.  Okay.  Did you actually work 90.63 hours of overtime during that period?

A.  Possible.

Q.  Do you know?

A.  Not offhand.  Can't recollect.

Q.    Okay.  Did you actually work 170.63 hours in that 14-day period?

 MR. LYLE:  Objection.  Asked and answered.

A.  I don't recall.

Q.  (BY MR. McFALL)  Okay.  Do you know how many days in that 14-day period you actually worked?

 A.  No.

Exh. A, 73:10-74:9.  Accordingly, Plaintiff lacks any evidence which shows that he is entitled to

payment for the 90.63 hours that he is claiming in that 14-day time frame.[2]  Similarly, Plaintiff

testified at his deposition that he does not even know whether he claims similar unpaid wages for

other pay periods.  UMF, ¶ 11.  This vague testimony fails to meet Plaintiff's burden to come

---

[2]  In its surreply to Plaintiff's motion for conditional class certification, Defendant presented the declaration of Scott Kiel, in which Mr. Kiel explained the paystub and showed that Plaintiff actually worked 100.1 total hours in the December 8 – 21, 2013, pay period and that Plaintiff was paid for 20.1 hours of overtime.  *See* [Doc. 73], pp. 2 – 4, and [Doc. 73 – 1].

forward with evidence which would allow the Court to accurately calculate the amount of wages Plaintiff claims in this case.

Similarly, Plaintiff lacks any evidence showing the amount of end-of-shift travel time for which he seeks compensation in this case, or whether such time qualifies as overtime under the FLSA.  UMF, ¶ 13.  Plaintiff testified at his deposition that he does not have an estimate of the overtime hours for which he is seeking compensation, and that he did not keep any records of the overtime which he is claiming.  *Id*.  As a result, Plaintiff cannot prove with any reasonable specificity the amount of overtime wages he is seeking and summary judgment is therefore warranted.

## II.  THE PORTAL-TO-PORTAL ACT BARS PLAINTIFF'S END-OF-SHIFT TRAVEL TIME CLAIM.

To the extent Plaintiff asserts that he should have been paid for his 15 minutes of end-of-shift travel time under the FLSA, that claim is precluded by the Portal-to-Portal Act.  *See* 29 U.S.C. § 254.  The Tenth Circuit has interpreted the Portal-to-Portal Act consistently to hold that travel time at the beginning and end of a work-shift is not compensable under the FLSA.  *See Smith v. Aztec Well Servicing Co*., 462 F.3d 1274 (10th Cir. 2006); *United Transp. Union Local 1745* v. *City of Albuquerque*, 178 F.3d 1109, 1120-21 (10th Cir. 1999); *see also Abeyta v. Phelps Dodge Morenci, Inc*., 1998 U.S. App. LEXIS 6174 (9th Cir. Ariz. Mar. 26, 1998) (memorandum opinion) (finding that travel time back to the portal of a mine was not compensable).

The FLSA requires employers to pay employees for all time spent working on their behalf.  *See United Transp. Union Local 1745 v. City of Albuquerque*, 178 F.3d 1109, 1116 (10th Cir. 1999) (citing 29 U.S.C. §§ 206, 207).  Congress, however, has not defined the term "work" as used in the FLSA.  Thus, the courts have historically determined whether or not an activity

qualifies as "work" under the FLSA on a case-by-case basis.  *See IBP, Inc. v. Alvarez*, 546 U.S. 21 (2005); *D A & S Oil Well Servicing, Inc. v. Mitchell*, 262 F.2d 552, 554-55 (10th Cir. 1958).

Shortly after the enactment of the FLSA, the United States Supreme Court broadly interpreted the term "work" to include many pre-shift and post-shift activities.  For example, in *Tennessee Coal v. Muscoda*, 321 U.S. 590 (1944), the Supreme Court held that employees must be compensated for travel time from the mine portal to their work stations located within the mine.  In *Anderson v. Mt. Clemens Pottery Co*., 328 U.S. 680 (1946), the Supreme Court similarly held that employees must be compensated for the time spent walking to their work stations.  These decisions resulted in thousands of lawsuits which would have imposed a significant impact on the economy.  As a result, Congress passed the Portal-to-Portal Act, 29 U.S.C. § 254, to amend the FLSA and shield employers from "judicial interpretations of the FLSA [that] had superseded 'long-established customs, practices, and contracts between employers and employees, thereby creating wholly unexpected liabilities.'"  *Smith v. Aztec Well Servicing Co*., 462 F.3d 1274, 1286 (10th Cir. 2006) (quoting *Alvarez*, 546 U.S. at 26, 126 S. Ct. at 519).

Section 4 of Portal-to-Portal Act, in relevant part, states that:

> no employer shall be subject to any liability or punishment under the Fair Labor Standards Act of 1938, as amended . . ., on account of the failure of such employer to pay an employee minimum wages, or to pay an employee overtime compensation, for or on account of any of the following activities of such employee . . .
>
> (1) *walking, riding, or traveling to and from the actual place of performance of the principal activity or activities which such employee is employed to perform*

29 U.S.C. § 254 (emphasis added). In addition, 29 C.F.R. § 785.34 mandates that travel time will not be considered compensable time when there is a contract (such as a collective bargaining agreement) which provides that travel time will not be paid.

**A. Plaintiff's End-of-Shift Travel Time is Not Compensable Under the FLSA.**

Plaintiff claims that he is entitled to compensation for approximately 15 minutes of end-of-shift travel time, for travel from his work equipment back to the portal of the Chino Mine. The Portal-to-Portal Act bars Plaintiff's claim. *See Smith v. Aztec Well Servicing Co*., 462 F.3d 1274, 1288 (even mandatory carpooling to and from work site is "riding" or "traveling" within the meaning of the Portal-to-Portal Act); *City of Albuquerque*, 178 F.3d 1120-21; *Garcia v. Crossmark, Inc*., 2015 U.S. Dist. LEXIS 54374, *11 (D.N.M. Mar. 26, 2015) (memorandum opinion).

In *Smith v. Aztec Well Servicing Co.*, the Tenth Circuit looked at an analogous situation and held that an oil and gas drilling company was not required to pay its employees who worked at remote well locations for travel time to and from the well site. 462 F.3d at 1288. In that case, company supervisors asked employees to meet at a designated location so that the entire crew could travel to and from the well site together. *Id*. at 1280. The Tenth Circuit concluded that this travel time was not compensable because it was governed specifically by the exceptions to the FLSA in the Portal-to-Portal Act. *Id*. The court explained that the employees were required to travel together for commuting reasons and there was no evidence that they participated in integral and indispensable activities related to the drilling of wells during their travel time. *Id*.

In *Abeyta v. Phelps Dodge Morenci, Inc*., employees argued that they were entitled to compensation for travel time from the portal of the Morenci mine to their respective work sites. 1998 U.S. App. LEXIS 6174, at *3. The employees were required to line-up in an area near the Morenci Mine office. *Id*. Prior to doing so, employees would park in an employee parking lot

14

outside of the main gate.  *Id*.  After parking their vehicles, employees would walk to their line-up area to receive their work assignments and participate in a safety talk.  *Id*.  The employees were then transported in company vans to various work sites throughout the mine. *Id*.  Beginning in March of 1993, Phelps Dodge changed the locations where it gave assignments to employees. *Id*.  It had employees line-up outside of the Morenci mine office and then transported them by bus to the Metcalf Pit, which was 4.6 miles away.  *Id*.  This bus ride took approximately 15 minutes and employees were not paid for this travel time.  *Id*.  The Ninth Circuit found that this travel time was not compensable under the Portal-to-Portal Act.  *Id*. at *4.

Other Circuit Court opinions are in accord.  *See United Paperworkers Int'l Union, Local No. 30192 v. Riverside Cement Co.,* 1995 U.S. App. LEXIS 13706, 11-12 (9th Cir. June 2, 1995) ("We conclude that the district court properly determined that the disputed travel time was not compensable for purposes of calculating overtime pay under the general exclusion of the Portal to Portal Act."); *Griffin v. S & B Eng'rs & Constructors, Ltd.*, 507 Fed. App'x 377, 382-83 (5th Cir. 2013) (holding that the travel time spent on mandatory bus rides between a set meeting site and the company's plant "is not compensable under the FLSA"); *Bonilla v. Baker Concrete Constr., Inc.*, 487 F.3d 1340, 1342-43 (11th Cir. 2007) (holding that the time construction workers assigned to an airport terminal project spent traveling in employer vehicles to and from their work site was exempt from compensation under the FLSA); *Ralph v. Tidewater Constr. Corp.*, 361 F.2d 806 (4th Cir. 1966) (holding that time workers spent traveling on an employer's boat to a construction site was not compensable under the FLSA).

Similar to the situation in *Aztec Well Servicing Co*. and the above-cited authorities, Plaintiff is seeking compensation for travel time at the end of his work shift.  Plaintiff was merely transported from the place where he parked his equipment to the operations center so he

could clock out for the day before going home. Thus, like the plaintiffs in *Aztec Well Servicing Co.*, Plaintiff is not entitled to compensation for that travel time under the FLSA.

### III.   PLAINTIFF FAILED TO EXHAUST HIS REMEDIES UNDER THE CBA.

Plaintiff's claims for unpaid overtime during his First Period of Employment further fail as a matter of law because Plaintiff was subject to a CBA and he failed to follow the grievance procedures outlined in the CBA prior to filing his complaint with the Court.  As discussed below, the CBA:  (1) specifically applied to all Production Truck Drivers – including Plaintiff; (2) provided that travel time of 15 minutes or less was not compensable; and (3) contained a mandatory grievance procedure which should have been followed by Plaintiff.  Accordingly, Plaintiff's failure to follow the grievance procedure included with the CBA is dispositive to his claim for unpaid travel time for any time periods during his First Period of Employment.

#### A.   Plaintiff's Employment was Subject to the Terms of the CBA.

There was a CBA in place at the Chino Mine which governs Plaintiff's claims during his First Period of Employment.  UMF, ¶¶ 17-22.  The terms and conditions of this CBA apply to Plaintiff's claims even if Plaintiff was not a member of the Union.  *See*, *e.g*., *Saunders v. Amoco Pipeline Co.*, 927 F.2d 1154, 1156 (10th Cir. 1991) (individual employee is bound by terms of collective bargaining agreement even if not a union member*); Hodges v. Atchison, T. & S.F. Ry.*, 728 F.2d 414, 417 (10th Cir.), *cert. denied*, 469 U.S. 822, 83 L. Ed. 2d 43, 105 S. Ct. 97 (1984) (same); *Montag v. Aerospace Corp.*, 1996 U.S. App. LEXIS 20339 (9th Cir. Cal. Aug. 12, 1996) (same); *Quesnel v. Prudential Ins. Co.*, 66 F.3d 8, 11 (1st Cir. 1995). The Tenth Circuit has explained that "an individual employed in a craft governed by a collective bargaining agreement is bound by the terms of that agreement, regardless of his union membership." *Saunders*, 927 F.2d at 1156 (citing *Baker v. Amsted Indus., Inc.*, 656 F.2d 1245, 1248-49 (7th Cir. 1981) (union

designated by majority of employees in bargaining unit shall be the exclusive representative of all employees in that unit, even those employees who preferred a different representative or no representative at all; collective bargaining agreement negotiated by representative becomes "the law of the plant for all employees"), *cert. denied*, 456 U.S. 945, 102 S. Ct. 2011, 72 L. Ed. 2d 468 (1982)).

Here, the CBA was in effect from August 2011 until November 14, 2014.  UMF, ¶ 17. The CBA states that it applied to all of the employees who work is a job classification contained in Exhibit A to the CBA, which included Plaintiff's position of Production Truck Drivers.  UMF, ¶ 18.  Plaintiff worked as a Production Truck Driver from August of 2011 until March of 2014. UMF, ¶¶ 1, 18.    Therefore, the CBA governs the terms of Plaintiff's employment during the First period of his employment at the Chino Mine even if he was not a member of the union.

**B. Plaintiff's Claim for Unpaid Travel Time Contradicts the Terms Agreed to in The CBA.**

Plaintiff seeks to challenge a term and condition contained within the CBA concerning the payment for end-of-shift travel time.  For example, the CBA expressly stated that end-of-shift travel time which is 15 minutes or less was not compensable.  UMF, ¶¶ 20.  Plaintiff is challenging this provision in the CBA by asserting a claim in the above-captioned case for compensation for all of his end-of-shift travel time. UMF, ¶ 9.  In fact, at his deposition, Plaintiff explained that this challenge of the CBA provision was "his complaint."  UMF, ¶ 9.  It is, therefore, clear that Plaintiff's claims intertwine with the rights and obligations contracted for by the bargaining unit within the CBA and that Plaintiff was required to exhaust his contractual remedies under the CBA prior to filing this suit.

Numerous courts have held that when an FLSA claim involves the interpretation of a right or obligation contracted for under a CBA, the grievance procedures of the CBA must be

followed.  *See*, *e.g.*, *Patton v. Stolle Mach. Co., LLC*, 2015 U.S. Dist. LEXIS 112326 (D. Colo.
Aug. 25, 2015) (holding that when "an FLSA claim depends on the disputed interpretation of a
provision in the applicable collective bargaining agreement, 'an employee must first go to
arbitration—through the representative union—before vindicating his or her rights in federal
court under the FLSA.'") (quoting *Bell v. SEPTA*, 733 F.3d 490, 494 (3d Cir. Pa. 2013)).[3]  As a
result, Plaintiff was required to follow the grievance procedures contained within the CBA
before filing suit.

### C.  Plaintiff Failed to Exhaust His Remedies Under the CBA.

Plaintiff failed to follow the grievance procedure in the CBA before filing this suit.  The
Supreme Court has long held that when a collective bargaining agreement contains a grievance
procedure, the requirements contained within that procedure must first be exhausted before the
employee files a lawsuit.  *See Vaca v. Sipes*, 386 U.S. 171, 184, 17 L. Ed. 2d 842, 87 S. Ct. 903
(1967); *Republic Steel Corp. v. Maddox*, 379 U.S. 650 (1965); *Hines v. Anchor Motor Freight,
Inc.*, 424 U.S. 554, 563 (1976) ("an employee could not sidestep the grievance machinery
provided in the contract and that unless he attempted to utilize the contractual procedures for
settling his dispute with his employer, his independent suit against the employer in the District
Court would be dismissed.").  Similarly, the Tenth Circuit has concluded that "an employee can
only sue if he or she has exhausted any exclusive grievance procedures provided in the collective
bargaining agreement." *United Food & Commercial Workers, Local Union No. 7R v. Safeway
Stores, Inc.*, 889 F.2d 940, 944 (10th Cir. 1989).  Indeed, the Supreme Court and Tenth Circuit
have both indicated that employees are required to exhaust their contractual remedies even after
the collective bargaining agreement has expired.  *See Nolde Bros. v. Bakery & Confectionery*

---

[3] *See also Vadino v. A. Valey Engineers*, 903 F.2d 253, 266 (3d Cir. Pa. 1990); *Cantave v. Uptown Communs. &
Elec. Inc.*, 2015 U.S. Dist. LEXIS 103159 (E.D.N.Y. Aug. 5, 2015); *Sanchez v. Local 660, United Workers of Am.*,
25 F. Supp. 3d 261 (E.D.N.Y. 2014).

*Workers Union*, 430 U.S. 243, 254 (1977); *see also Riley Mfg. Co. v. Anchor Glass Container Corp.*, 157 F.3d 775, 781 (10th Cir. 1998).

Here, the CBA contained exclusive grievance procedures which Plaintiff obviously failed to exhaust before filing suit. UMF, ¶¶ 21-22.  The CBA stated that its grievance procedures applied to any claims involving a violation "of a specific provision of this Agreement in connection with a specific act, or an alleged violation of an employment related statute, regulation, or other law."  UMF, ¶ 21.  Under the CBA grievance procedures, employees were required to submit a written and signed grievance to their supervisor "no later than 10 days after the event giving rise to the grievance."  Exh. 1 to Exh. B, ¶ 6.6 (emphasis added).  Plaintiff was then required to appeal his supervisor's decision with his department manager within 10 days after receiving a decision from his supervisor and then with others at the Chino Mine.  *Id.* Plaintiff did not follow this process.

While Plaintiff testified at his deposition that he did complain numerous times to his supervisors about not being paid for all of his travel time, Plaintiff did not pursue the grievance procedure any further.  For example, there is no evidence that Plaintiff submitted a written and signed grievance to his supervisors, or that he appealed a decision issued by his supervisors to the department manager.  Likewise, there is no evidence that Plaintiff further appealed this matter to the manager of human resources, or pursued the matter in arbitration.  In fact, Plaintiff testified at his deposition that he could not remember whether he had ever raised his complaints with anyone within the human resources department.  Accordingly, Plaintiff failed to exhaust his remedies under the CBA.

As a result, Plaintiff's failure to timely exhaust the grievance procedures under the CBA is dispositive of his claim for unpaid travel time during any applicable portions of Plaintiff's First Period of Employment.  Summary judgment is therefore warranted on this issue.

## CONCLUSION

WHEREFORE, for the foregoing reasons, Defendant respectfully requests that this Court grant its motion for summary judgment, dismiss Plaintiff's claims with prejudice, and grant any other further relief as this Court deems just and proper.

**MODRALL, SPERLING, ROEHL, HARRIS & SISK, P.A.**

By: */s/ Jennifer L. Bradfute*
George R. McFall
Jennifer L. Bradfute
Attorneys for Defendant
Post Office Box 2168
Bank of America Centre
500 Fourth Street NW, Suite 1000
Albuquerque, New Mexico  87103-2168
Telephone: 505.848.1800

I HEREBY CERTIFY that on the 29th
day of December, 2016, I filed the foregoing
electronically through the CM/ECF system,
which caused the parties or counsel to be
served by electronic means, as more fully
reflected on the Notice of Electronic Filing:

James P. Lyle, Esq.
Law Offices of James P. Lyle, P.C.
1116 Second Street
Albuquerque, New Mexico 87102

**MODRALL SPERLING ROEHL HARRIS & SISK, P.A.**

By: _/s/ Jennifer L. Bradfute_
       Jennifer L. Bradfute