# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

WILLIAM EAGLE, individually and
on behalf of all similarly situated persons,

      Plaintiff,

v.                                  CV 15-577 MV/SMV

FREEPORT-McMORAN, INC., f/k/a
FREEPORT-McMORAN COPPER &
GOLD, INC., a Delaware Corporation,

      Defendant.

## MEMORANDUM OPINION AND ORDER

THIS MATTER comes before the Court on Defendant's Motion for Summary Judgment on Unpaid Overtime Wages under the Fair Labor Standards Act [Doc. 92]. The Court, having considered the motions, briefs, and relevant law, and being otherwise fully informed, finds that the Motion is well-taken and will be granted.

## BACKGROUND

"The facts supported by evidence, [viewed] in the light most favorable to [Plaintiff]" as the party opposing the summary judgment, are as follows.[1] *Cavanaugh v. Woods Cross City*, 625 F.3d 661, 662 (10th Cir. 2010). Plaintiff William Eagle was employed with the Freeport-McMoRan Chino Mining Company (the "Chino Mine") as a Production Truck Driver from August 1, 2011 through March 20, 2014, and from February 16, 1025 through June 17, 2015. Doc. 92-1 at 21. During both periods of Plaintiff's employment, the workweek at the

---

[1] In his response in opposition to Defendant's motion, Plaintiff states that he disputes some of the facts as set forth in Defendant's statement of undisputed facts, and takes issue with the relevance of others. A careful reading of Plaintiff's response, however, makes clear that Plaintiff does not offer conflicting evidence that creates a dispute of material fact. Further, Plaintiff's statement of additional material facts is unsupported by evidence.

Chino Mine consisted of a 168-hour period, beginning at the start of the day shift on Sunday and ending at the start of the day shift on the following Sunday. Doc. 92-2 at ¶ 2.

Also during both periods of his employment, Plaintiff was a member of "Crew 2". Doc. 92-1 at 18. Crew 2 followed a schedule known as a "Super Seven" schedule. The schedule consisted of the following cycle: four days of 12-hour shifts, followed by seven days off; four days of 12-hour shifts, followed by three days off; and three days of 12-hour shifts followed by three days off. Doc. 92-2 at ¶ 18. The cycle then repeated itself. *Id.*

Generally, members of Crew 2 worked two 36-hour weeks and two 48-hour weeks, resulting in 16 hours of overtime each month. *Id.* at ¶ 19. Because they might be asked to work additional hours or might switch shifts with other employees, members of Crew 2 might have more or less than the general 16 overtime hours per month. *Id.*

At an evidentiary hearing held by Magistrate Judge Stephan M. Vidmar on March 10, 2016, Plaintiff testified that he is seeking payment for unpaid overtime during both periods of his employment, which consists of time spent traveling from his equipment back to the portal of the Chino Mine at the end of each work shift. He explained this time as follows:

> A. After we queue up the trucks, we get into a company vehicle, a company van, one of the operators drives the van, whether it's equipment or a truck driver, and they go around and pick up drivers at the different queue points and take them back to operations for end-of-shift.
>
> Q. And in terms of the actual hours that were paid versus the actual hours that were worked, what was the – generally the difference?
>
> A. 15 [minutes] a day for every day worked.

Doc. 92-3 at 8-9.

Similarly, in his deposition, Plaintiff testified to the following:

>       Q.      Did you understand that 15 minutes of the travel time from your equipment back to the operation was not compensable; that you were not being paid for that?
>
>       A.      That's my complaint.

Doc. 92-1 at 52.

Plaintiff also alleges that his paystubs indicate that he worked 170.63 hours from Sunday, December 8, 2013, through Saturday, December 21, 2013, and that he should have been paid overtime for 90.63 hours, equaling $1,837.01 in unpaid overtime wages.    Doc. 92-1 at 73. Plaintiff, however, testified at his deposition that he cannot recall what hours he worked during this time period.    *Id.* at 73.    Plaintiff further testified that he does not know whether he is claiming similar wages based on his other pay stubs.    *Id.* at 76.    Plaintiff has no records that show when he worked overtime at the Chino Mine that support his allegations of unpaid wages. *Id.* at 45.    Plaintiff testified as follows:

>       Q.      What I am interested in is whether you have an idea or estimate of how much you are owed for unpaid straight time.
>
>       A.      No.
>
>       Q.      Okay.   How about unpaid overtime?   Do you have an estimate of how much you are owed for unpaid overtime?
>
>       A.      No.
>
>       Q.      Okay.   Did you keep any independent records that you created of how much time you worked when you were at Chino?
>
>       A.      No.
>
>       Q.      Did you keep any independent records of how much time you believe that you were not paid for while working at Chino?
>
>       A.      No.

Q.      And that would – and I'm asking that question as it applies to both straight time and overtime.    So you have no independently-created records that would show how much straight time you are owed, correct?

A.      Correct.

Q.      And you have no independent records created by you that would show how much unpaid overtime you incurred, correct?

A.      Correct.

*Id.*

The Chino Mine maintains time clock records to track the time its employees spend working.    Doc. 92-4 at ¶ 4.    Those records show the times at which an employee clocks in and clocks out for each shift worked.    *Id.*    The records for Plaintiff show that, for the pay period from Sunday, December 8, 2013 through Saturday, December 21, 2013, Plaintiff worked 100.1 hours.    *Id.*    Out of those 100.1 hours, 20.1 hours were overtime hours.    *Id.* at ¶ 3.    Plaintiff's pay stub for that same period – December 8, 2013 through December 21, 2013 – shows that he was paid one and one-half times his regular rate of pay for 20.1 hours of overtime.    *Id.* at ¶ 6.

Based, *inter alia*, on Defendant's alleged failure to properly compensate him for overtime, Plaintiff commenced the instant action on July 7, 2015, arguing that Defendant is in violation of the Fair Labor Standards Act ("FLSA").    On the instant motion, Defendant moves for summary judgment on Plaintiff's FSLA claims.    Plaintiff opposes the motion.

**STANDARD**

The court must "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."    Fed. R. Civ. P. 56(a).    The moving party need not "produce evidence showing the absence of a genuine issue of material fact."    *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).    Rather, "the burden on the moving party may be discharged by 'showing' – that is, point out to the

district court – that there is an absence of evidence to support the nonmoving party's case." *Id.*; *see also Sports Unltd., Inc., v. Lankford Enter., Inc.*, 275 F.3d 996, 999 (10th Cir. 2002) (Although "[t]he burden of showing that no genuine issue of material fact exists is borne by the moving party," when "the moving party does not bear the ultimate burden of persuasion at trial, it may satisfy its burden by pointing to a lack of evidence for the nonmovant on an essential element of the nonmovant's claim"). Once the moving party has met this burden, the nonmoving party must "go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Id.* at 324. In making this showing, the nonmoving party may not rely on "the mere pleadings themselves." *Id.*

For purposes of Rule 56(a), a dispute is genuine "if there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way." *Becker v. Bateman*, 709 F.3d 1019, 1022 (10th Cir. 2013). "An issue of fact is material if under the substantive law it is essential to the proper disposition of the claim." *Id.* (citation omitted). In other words, "[t]he question . . . is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* (citation omitted). On summary judgment, the court "construe[s] the factual record and the reasonable inferences therefrom in the light most favorable to the nonmoving party." *Mata v. Saiz*, 427 F.3d 745, 749 (10th Cir. 2005).

## DISCUSSION

On the instant motion, Defendant argues that it is entitled to judgment as a matter of law on Plaintiff's FLSA claims. In support of its argument, Defendant contends that: (1) there is an absence of evidence to support Plaintiff's claim that he worked a certain number of overtime

hours for which he was not paid; (2) Plaintiff's claim that he is owed compensation for
end-of-shift travel time is precluded by the Portal-to-Portal Act, 29 U.S.C. § 254; and (3)
Plaintiff failed to exhaust his remedies under his collective bargaining agreement ("CBA"). As
set forth herein, the Court finds that Plaintiff has not met his burden of designating specific facts
showing that there is a genuine dispute as to whether Defendant compensated him for his
overtime hours, and that, as Plaintiff concedes, his end-of-shift travel time claims are precluded
by the Portal-to-Portal Act. Accordingly, the Court need not reach the issue of whether
Plaintiff's claims are also barred by his failure to exhaust remedies under the CBA.

I.  <u>Plaintiff Fails to Establish that Defendant Did Not Compensate Him For Overtime Hours.</u>

On an FLSA claim for unpaid overtime wages, the plaintiff "bears the burden of proof to
establish, by a preponderance of the evidence, the number of hours of overtime worked each
week and the wages due per pay period." *Bustillos v. Bd. of Cty. Comm'rs of Hidalgo Cty.*, No
13-CV-971, 2015 WL 7873813, at *14 (D.N.M. Oct. 20, 2015). "When an employer's payroll
records are unreliable, an employee can meet his burden of proof by (i) showing that he 'in fact
performed work for which he was improperly compensated,' and (ii) producing 'sufficient
evidence to show the amount and extent of that work as a matter of just and reasonable
inference.'" *Id.* (quoting *Baker v. Barnard Cons. Co., Inc.*, 146 F.3d 1214, 1220 (10th Cir.
1998)). While the plaintiff need not "establish the number of overtime hours worked with
concrete certainty," "[a]t a minimum, an FLSA complaint must set forth the approximate number
of unpaid regular and overtime hours allegedly worked." *Id.* at *15. Thus, for example, in
*Mitchell w. Caldwell*, where the plaintiff kept a daily record of hours worked, the court found the
evidence a sufficient "basis for ascertaining by mathematical calculation the average amount of
overtime worked per week." 249 F.2d 10, 11-12 (10th Cir. 1957). In contrast, in *Courtright v.*

*Bd. of Cty. Commr's of Payne Cty., Okla.*, the court concluded that testimony that an employee worked five unscheduled hours per period and attended unscheduled trainings, and that another employee "generally worked a double shift every two months and was required to stay past a scheduled shift for a few additional hours twice a month" was insufficient, without other facts or evidence, to "support a reasonable finding that they worked overtime hours." No. 08-CV-230, 2011 WL 2181954, at *10 (W.D. Okla. June 3, 2011); *see also Brown v. ScriptPro, LLC*, 700 F.3d 1222, 1230 (10th Cir. 2012) (finding that, even though the plaintiff employee demonstrated that he worked overtime, he failed to show the amount of overtime by just and reasonable inference).

Applying these principles, in *Bustillos*, the court found that the evidence offered by the plaintiff did not, as a matter of law, allow it "to draw a just and reasonable inference of the hours worked." 2015 WL 7873813, at *15. First, the court noted that the plaintiff brought "no documentation establishing the amount of overtime she allegedly performed." *Id.* Second, the court found that the plaintiff's testimony alone was insufficient "to create a just and reasonable inference of the amount of time worked." *Id.* The court explained that, "[i]n cases where the courts have relied on a plaintiff's testimony to establish the time worked, the plaintiff has been able to establish a consistent pattern of overtime work from which the court could infer the number of hours," in addition to proferring "other evidence to support their testimony." *Id.* In the case before it, the plaintiff's testimony: "(i) provide[d] little sense of how many hours of uncompensated work she performed; (ii) [did] not establish a consistent pattern of overtime from which the court could infer her overtime hours; and (iii) ha[d] changed throughout the litigation." *Id.* In sum, the court found the plaintiff's "vague and conflicting recollections" insufficient to allow it to infer the number of alleged overtime hours that the plaintiff performed. *Id.* at *16.

7

As in *Bustillos*, Plaintiff herein has failed to present testimony and supporting evidence sufficient to create a just and reasonable inference of the amount of overtime he worked. As an initial matter, Defendant has submitted records that demonstrate that, for the pay period from Sunday, December 8, 2013 through Saturday, December 21, 2013, Plaintiff worked 100.1 hours. Doc. 92-4 at ¶ 4. Out of those 100.1 hours, 20.1 hours were overtime hours. *Id.* at ¶ 3. Plaintiff's pay stub for that same period – December 8, 2013 through December 21, 2013 – shows that he was paid one and one-half times his regular rate of pay for 20.1 hours of overtime. *Id.* at ¶ 6.

In the face of these records, Plaintiff has failed to come forward with any evidence to support his claims that, during this pay period, he worked a total of 170.63 hours and is owed overtime wages for approximately 90 hours of overtime. Indeed, Plaintiff testified during his deposition that he has no idea or estimate of how much he is owed for unpaid overtime, and that he has no record of how much total time he worked, how much time he worked for which he was not paid, or how much unpaid overtime he incurred. Doc. 92-1 at 45. Similarly, Plaintiff testified that he does not recall whether during the December 8, 2013 through December 21, 2013 pay period he worked 170.63 total hours or 90.63 overtime hours, and in fact does not recall how many days in that 14-day period he actually worked. *Id.* at 73-74. Plaintiff further testified that he does not know whether he claims unpaid wages for any pay periods other than the December 8, 2013 through December 21, 2013 pay period. *Id.* at 76-77. Thus, Plaintiff's testimony provides little sense of how many hours of uncompensated work he performed and does not establish a consistent pattern of overtime from which the court could infer his overtime hours.

In opposing summary judgment on his overtime claims, rather than submitting evidence

to show the amount and extent of his allegedly uncompensated work, Plaintiff instead challenges the workweek established by the Chino Mine and argues that, when his hours are calculated based on a proper workweek, namely any "given seven day period," Defendant's own records, and the testimony of its supervisors, support Plaintiff's unpaid overtime claims. Doc. 99 at 2. Plaintiff's argument is unconvincing.

Plaintiff has not pointed to, and the Court has not found, any authority to support his theory that the workweek established at the Chino mine runs afoul of the FLSA or any federal regulations and that, the statute or regulations require the Court to look instead at any "given seven day period" to calculate his overtime. As noted above, the workweek at the Chino Mine consisted of a 168-hour period, beginning at the start of the day shift on Sunday and ending at the start of the day shift on the following Sunday. Doc. 92-2 at ¶ 2. This workweek meets the definition of "workweek" as set forth in the regulations promulgated by the Department of Labor interpreting the FLSA. *See* 29.C.F.R. § 778.105 ("An employee's workweek is a fixed and regularly recurring period of 168 hours – seven consecutive 24-hour periods. It need not coincide with the calendar week but may begin on any day and at any hour of the day. . . . Once the beginning time of an employee's workweek is established, it remains fixed regardless of the schedule of hours worked by him.").

There is thus no basis for the Court to eschew the Chino Mine's established workweek in favor of a random seven-day period in order to determine whether Plaintiff was properly compensated for his work. Accordingly, the only purported evidence cited by Plaintiff – overtime calculations elicited during the depositions of Chino Mine supervisors based on randomly chosen seven-day periods with no correlation to the actual workweek at the Chino Mine – is insufficient to meet Plaintiff's burden to establish the number of hours of overtime

worked each week and the wages due per pay period.

Plaintiff has failed to show that he in fact performed work for which he was improperly compensated. Indeed, the only reliable evidence before the Court, namely, the records submitted by Defendant, demonstrates that Plaintiff was compensated for all of his overtime work. Accordingly, Plaintiff has failed to meet his burden of designating specific facts showing that there is a genuine dispute as to whether he is entitled to overtime compensation.

II.     Plaintiff's End-of-Shift Travel Time is Not Compensable under the FLSA.

As Plaintiff concedes in his response, his claims for end-of-shift travel time are precluded by the Portal-to-Portal Act, as interpreted by the Tenth Circuit. Although the FLSA "typically requires employers to pay their employees for all time spent working on their behalf," under the Portal-to-Portal Act, the FLSA does not require employers to compensate an employee for time spent "walking, riding, or traveling to and from the actual place of performance of the principal activity or activities which such employee is employed to perform." 29 U.S.C. § 254(a)(1). "Employers are therefore not required to compensate employees for time spent commuting between home and their workplace, or for any activities that are 'preliminary to or postliminary to' their principal activities at work." *Smith v. Aztec Well Serv. Co.*, 462 F.3d 1274, 1286 (10th Cir. 2006) (quoting 29 U.S.C. § 254(a)). The Supreme Court has clarified that, under the Portal-to-Portal Act, "activities performed either before or after the regular work shift are compensable under the portal-to-portal provisions of the Fair Labor Standards Act [only] if those activities are an integral and indispensable part of the principal activities for which covered work[people] are employed." *Id.* at 1287 (quoting *Steiner v. Mitchell*, 350 U.S. 247, 256 (1956)). In particular, "when travel is solely for the transportation of employees to and from their principal place of work," that travel is not considered "an integral and indispensable part"

10

of the employees' principal activities, and thus is not compensable.  *Id.* (citation omitted).

In *Smith*, the Tenth Circuit addressed and rejected a claim for travel time analogous to that raised by plaintiff here.   Specifically, the plaintiff employees who worked on drilling rigs for the defendant natural gas and oil well drilling company brought suit under the FLSA, arguing that the defendant should be required to pay them for the time they spent traveling from Aztec, New Mexico, to drill sites, some of them in remote locations hours away.   Although a jury found in favor of the plaintiffs on the travel-time claims, the district court granted the defendant's motion for judgment as a matter of law, ruling that the plaintiffs' claims were barred by the Portal-to-Portal Act.   The Tenth Circuit affirmed, holding that the district court correctly found, as a matter of law, that the Portal-to-Portal Act removed any obligation that the defendant might otherwise have had under the FLSA to compensate the plaintiffs for their travel time. The Court found that neither the plaintiffs' mandatory carpooling to and from well sites, nor the fact that the plaintiffs were required to carry their personal safety equipment along with them, rendered their travel to and from the well sites "integral and indispensable" to their principal activities, and thus there was no basis to conclude that the plaintiffs' travel time "in and of itself was work for which they must be compensated."  *Id.* at 1289-90.

The holding in *Smith* is directly on point here.   Like the plaintiffs in *Smith*, Plaintiff was merely transported from the place where he parked his equipment to the operations center so that he could clock out for the day before going home.   Accordingly, Plaintiff's travel was not "integral and indispensable" to his principal activities, and thus was not work for which Defendant was required to compensate him.   Under *Smith*, as a matter of law, Plaintiff's claim for end-of-shift travel time is barred by the Portal-to-Portal Act.

While Plaintiff does not dispute that his claim for end-of-shift travel time is barred as a

matter of law, he nonetheless argues that Defendant "is responsible for paying this time, as it has done for many of its current employees."  Doc. 99 at 8.  Plaintiff, however, fails to submit evidence demonstrating that Defendant has compensated any of its employees for end-of-shift travel time.  In his response, Plaintiff cites as an example a letter from his attorney to an individual named Jesus Lopez, indicating that Defendant had agreed to pay him $129.56 based on Defendant's "calculations regarding the amount of time worked for which [he] was not paid." Doc. 99-2.  Plaintiff, however, testified at the March 10, 2016, hearing that this payment to Mr. Lopez and similar payments to other employees actually had nothing to do with Plaintiff's own claims for unpaid travel time, and were instead payments for the unrelated issue of time clock discrepancies.  Specifically, Plaintiff stated that "[t]his is no – no payment and anything to do with the unpaid overtime.  This is something totally different.  And it's not involved in the lawsuit that I originally am a participant in."  Doc. 100-4.  In the face of *Smith* and the Portal-to-Portal Act, Plaintiff's unsupported claim that Defendant paid Mr. Lopez, or any other employee, for end-of-shift travel time, is insufficient to meet his burden of designating specific facts showing that there is a genuine dispute as to whether he is entitled to end-of-shift travel time compensation.

## CONCLUSION

In opposing Defendant's motion for summary judgment, Plaintiff has failed to meet his burden of designating specific facts showing that there is a genuine dispute as to whether he is entitled to overtime or end-of-shift travel time compensation.  Accordingly, Defendant is entitled to summary judgment on Plaintiff's claims.

**IT IS THEREFORE ORDERED** that Defendant's Motion for Summary Judgment on Unpaid Overtime Wages under the Fair Labor Standards Act [Doc. 92] is **GRANTED** and Plaintiff's claims are dismissed, with prejudice, in their entirety.

DATED this 26th day of September, 2018.

_____
MARTHA VÁZQUEZ
United States District Judge